UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIEL J. RODGERS, DOMINIQUE
LEUZZI-MEEK and JAMES A. PERRY, JR.,
individually, and as Representatives of a Class
of Participants and Beneficiaries of UniFirst
Corporation Retirement Savings Plan,

        Plaintiffs,

        v.

UNIFIRST CORPORATION, BOARD OF
DIRECTORS OF UNIFIRST CORPORATION,
and UNIFIRST CORPORATION RETIREMENT
PLANS COMMITTEE,

        Defendants.

Case No.

Class Action Complaint Under
29 U.S.C. § 1132(a)(2)

## COMPLAINT

Plaintiffs Daniel J. Rodgers, Dominique Leuzzi-Meek, and James A. Perry, Jr ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries of UniFirst Corporation Retirement Savings Plan ("Plan" or "UniFirst Plan"), by their counsel, WALCHESKE & LUZI, LLC, and JONATHAN M. FEIGENBAUM, ESQ., allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

### I.      INTRODUCTION

1. Plaintiffs bring this action under 29 U.S.C. § 1132(a)(2) on behalf of the Plan and the Plan's participants and beneficiaries against Defendants UniFirst Corporation ("UniFirst"); the Board of Directors of UniFirst Corporation ("Board"), and the UniFirst Corporation Retirement Plans Committee ("Plan Committee") (collectively, "Defendants," "UniFirst," or "UniFirst Defendants"), for breach of fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA").

1

2.  The UniFirst Defendants are fiduciaries to the UniFirst Plan.

3.  As fiduciaries, the UniFirst Defendants have an obligation to prudently curate a menu of investment options for the UniFirst Plan. They must regularly monitor those investment options and remove ones that become imprudent. The Plan's participants, who are current and former UniFirst employees, can invest their retirement savings in any of the funds that the UniFirst Defendants select for the UniFirst Plan.

4.  On or before 2009, the Plan Advisory Team selected the T. Rowe Price Growth Stock Fund (ticker: PRGFX) (the "TRP Growth Fund" or the "Fund"), as an investment option for the UniFirst Plan. The Committee has retained the TRP Growth Fund, whether organized as a mutual fund or collective investment trust, since at least 2009.

5.  The TRP Growth Fund is a large-cap growth strategy managed by T. Rowe Price. Morningstar[1] classifies the TRP Growth Fund as a large-cap growth fund.

6.  The TRP Growth Fund's benchmark is the Russell 1000 Growth Index. The portfolio is heavily tilted toward technology and other high-growth sectors.

7.  Large-cap growth funds typically pursue a strategy of investing in the stock of large companies with high growth potential. They are a popular category of investment. As a result, the Plan's fiduciaries had (and have) hundreds of different large-cap growth funds to choose from when selecting investment options for the Plan. Yet, The TRP Growth Stock Fund has been the only Large-Cap Growth option Defendants have made available to the Plan's participants since 2009, if not earlier.

8.  The TRP Growth Fund is an "actively managed" fund. Active management is offered on the premise that the manager's judgment can add value relative to an appropriate benchmark after

---

[1] Morningstar is the leading provider of independent investment research products (e.g., data and research insights on managed investment products, publicly listed companies, and private capital markets) for individual investors, financial advisors, asset managers, retirement plan providers and sponsors, and institutional investors in the private capital markets in North America, Europe, Australia, and Asia.

accounting for fees and risk. Persistent long-term underperformance relative to that benchmark is therefore a significant fiduciary red flag. "Passive funds," by contrast, replicate the investment holdings of those market benchmarks; they are designed to match (but not beat) benchmarks. They therefore require less effort to manage than actively managed funds and carry far lower fees.

9.      The TRP Growth Fund failed its primary objective: it could not beat its benchmark. By December 31, 2019, the cumulative investment performance of the TRP Growth Stock Fund had lagged its designated benchmark—the Russell 1000 Growth Index[2]— over the relevant trailing three-, five-, and ten-year periods, and its poor relative performance was not isolated to a single short-term period or unusual market event. Rather, the underperformance persisted across multiple rolling time horizons and market environments, suggesting a sustained inability to add value relative to its own stated benchmark. Participants paid active-management fees without receiving persistent active-management outperformance.

### T. Rowe Price Growth Stock I

| PRUFX | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 - Year Return | 22.63% | 50.82% | 34.74% | 73.75% | 77.97% | 115.80% | -1.23% | 4.78% | 13.13% | 118.53% |
| 5 - Year Return | 103.00% | 128.47% | 62.67% | 95.79% | 141.95% | 186.26% | 28.22% | 88.15% | 86.40% | 57.44% |
| 10 - Year Return | 114.59% | 160.23% | 346.64% | 308.40% | 378.82% | 481.10% | 192.95% | 206.07% | 264.94% | 280.94% |

### Russell 1000 Growth TR USD

| Russell 1000 Growth TR USD | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|---|---|---|---|
| 3 - Year Return | 27.91% | 47.33% | 37.32% | 74.91% | 86.03% | 141.02% | 25.22% | 29.01% | 34.83% | 125.59% |
| 5 - Year Return | 96.79% | 122.33% | 64.03% | 97.90% | 159.38% | 209.08% | 68.21% | 143.68% | 138.26% | 103.97% |
| 10 - Year Return | 122.66% | 159.30% | 314.81% | 312.34% | 389.29% | 508.25% | 273.97% | 299.72% | 371.52% | 429.06% |

10.     Moreover, the Fund underperformed other large-cap growth alternatives over the same three-, five-, and ten-year stretches. Faced with the Fund's long-term poor performance, a prudent

---

[2] The Russell 1000 Growth Index is independently maintained by FTSE Russell, a wholly-owned subsidiary of the London Stock Exchange Group. FTSE Russell is a leading global provider of benchmarking, analytics, and data solutions for investors with over 30 years in the business. The Russell 1000 Growth Index measures the performance of the large-cap growth segment of the U.S. stock market. It includes those Russell 1000 companies with relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (i.e., growth companies).

fiduciary monitoring the Plan in accordance with a reasonable investment review process would have placed the TRP Growth Fund on watch, investigated its persistent underperformance, compared it to readily available alternatives, and removed or replaced it no later than the start of the Class Period.

11.     Yet, UniFirst took no action. It continued to include the TRP Growth Fund in the Plan's lineup despite a market teeming with hundreds of large-cap growth alternatives. Some of these alternatives clearly offered participants better value for their money. For example, the Voya Russell Large Cap Growth Index Port I Fund not only performed better than the TRP Growth Fund, but it also charged participants a significantly lower fee.

12.     The TRP Growth Fund's poor performance continued through the Class Period, which commences June 2, 2020, and continues through the date of judgment.

13.     As of December 31, 2024, Plan participants had invested over $554 million in the 401(k) Plan.  Approximately $55 million in the 401(k) Plan—or about 10%—was invested in the TRP Growth Fund. As described in Section VIII, by failing to remove the TRP Growth Fund, Defendants caused participants to lose tens of millions of dollars in retirement savings since the start of the Class Period.

14.     As fiduciaries of the Plan, Defendants are duty-bound to monitor the Plan's investments protect participants from imprudent investment options by removing them from the Plan's lineup within a reasonable time. Yet Defendants repeatedly refused to remove the TRP Growth Fund despite many years of poor performance. A prudent fiduciary would have removed the Fund well before, but not later than the start of the Class Period, and certainly during the ensuing years of poor performance throughout the Class Period. Defendants' conduct has been imprudent.

15.     To remedy UniFirst's breach of fiduciary duty, Plaintiffs bring this action on behalf of the Plan, its participants, and their beneficiaries under 29 U.S.C. § 1132(a)(2) to enforce the UniFirst Defendants' personal liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting

from each breach of fiduciary duty occurring during the Class Period. In addition, Plaintiffs seek such other Plan-wide equitable or remedial relief for the Plan as the Court may deem appropriate.

16.    Plaintiffs suffered concrete injuries to their Plan accounts because they invested in the TRP Growth Fund during the Class Period. Those injuries are fairly traceable to Defendants retaining the TRP Growth Fund as an investment option, and these injuries diminished the savings in Plaintiffs' retirement accounts.

17.    Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

18.    Plaintiffs did not have knowledge of all material facts (including, among other things, comparisons of the Plan's investment performance relative to other available investment alternatives) necessary to understand that the UniFirst Defendants breached their fiduciary duties in violation of ERISA until shortly before filing this Complaint. Further, Plaintiffs do not have actual knowledge of the specifics of the UniFirst Defendants' decision-making processes with respect to the Plan, including the UniFirst Defendants' processes for monitoring and removing Plan investments, because this information is solely within the possession of the UniFirst Defendants prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

## II.    PARTIES

### A.    Plaintiffs

19.    Plaintiff Daniel J. Rodgers brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C § 1109 to protect the interests of the Plan. Plaintiff Rodgers is a participant, as defined in 29 U.S.C. § 1002(7), in the UniFirst Plan during the Class Period. Plaintiff Rodgers

suffered individual injury by investing in the TRP Growth Fund.

20.    Plaintiff Dominque Leuzzi-Meek brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C § 1109 to protect the interests of the Plan. Plaintiff Leuzzi-Meek is a participant, as defined in 29 U.S.C. § 1002(7), in the UniFirst Plan during the Class Period. Plaintiff Leuzzi-Meek suffered individual injury by investing in the TRP Growth Fund.

21.    Plaintiff James A. Perry, Jr. brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C § 1109 to protect the interests of the Plan. Plaintiff Perry is a participant, as defined in 29 U.S.C. § 1002(7), in the UniFirst Plan during the Class Period. Plaintiff Perry suffered individual injury by investing in the TRP Growth Fund.

**B.    Defendants**

22.    Defendant UniFirst Corporation is a Massachusetts corporation headquartered in Wilmington, Massachusetts. UniFirst is one of North America's largest providers of workplace uniforms, workwear rental programs, facility services, and related safety products. Through a network of more than 270 service locations, UniFirst serves over 300,000 customer locations and employs approximately 16,000 workers throughout the United States and Canada.

23.    UniFirst is the Plan Sponsor. As Plan Sponsor, UniFirst acts through its Board of Directors.

24.    As required by 29 U.S. C. § 1102(a)(1), the Plan is established and maintained by a written plan document, the UniFirst Retirement Savings Plan Document ("Plan Document").

25.    UniFirst chose Bank of America Merrill Lynch ("Merrill") to provide Plan administrative services during the Class Period.

26.    The Board of Directors of UniFirst ("Board of Directors") is responsible for appointing and monitoring individuals responsible for administering and managing the UniFirst Plan, including those

on the Plan Committee, who are responsible for selecting and monitoring Plan investments. All of these individuals serve at the pleasure of the Board of Directors.

27. The Plan Committee functions as the investment oversight committee for the 401(k) plan. It is responsible for determining appropriateness of the Plan's investment offerings and monitoring investment performance, among other duties.

28. Current and former members of the Plan Committee are fiduciaries of the UniFirst Plan under 29 U.S.C. § 1002(21)(A) because they exercise discretionary authority and/or discretionary control respecting management of the Plan.

29. To the extent UniFirst has undergone or undergoes any merger, acquisition, restructuring, or transfer of relevant plan-sponsor or fiduciary responsibilities, Plaintiffs intend this action to include any successor entity or fiduciary responsible for the Plan, its assets, or the fiduciary conduct alleged herein.

### III.    JURISDICTION, VENUE, AND STANDING

30. This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2).

31. This District is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because it is the District in which the subject Plan is administered and where at least one of the alleged breaches took place. It is also the District in which the UniFirst Defendants reside.

32. As participants in the Plan and holders of the TRP Growth Fund, Plaintiffs have standing to bring claims on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2), and they are participants seeking appropriate Plan-wide relief under 29 U.S.C. § 1109. Thus, Plaintiffs bring this suit under § 1132(a)(2) in a representative capacity on behalf of the Plan as a whole and seek remedies under § 1109 to protect the Plan.

#### IV.     ERISA'S FIDUCIARY STANDARDS

**A.     Overview of ERISA's Fiduciary Duties of Loyalty and Prudence**

33.     ERISA exists, in large part, to protect the interests of participants, and their beneficiaries, in employee retirement plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1001(b)).

34.     "'[A]ny person who exercises discretionary authority or control in the management or administration of an ERISA plan is,' under the statute's terms, a fiduciary." *See Barchock v. CVS Health Corp.,* 886 F.3d 43, 44 (1st Cir. 2018) (citing 29 U.S.C. § 1002(21)(A)).

35.     ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement plans, like the UniFirst Plan, that are covered by ERISA.

36.     ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

37.     ERISA's fiduciary duties are "the highest known to the law." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (en banc) (internal quotation marks omitted).

38.     Even in a defined contribution plan in which participants choose their investments, plan fiduciaries must conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options. *Hughes v. Nw. Univ.*, 595 U.S. 170, 176 (2022).

39.     As part of its fiduciary duty, UniFirst "has a continuing duty to monitor [plan] investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). That "continuing duty" exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Id.*

"A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id*. at 530. If an investment is imprudent, UniFirst "must dispose of it within a reasonable time." *Id.* (citation omitted).

40.     The inquiry into the duties of loyalty and prudence is "context specific." *Id*.

41.     Defendants are all ERISA fiduciaries as they exercise discretionary oversight, authority, or control over the UniFirst Plan that it sponsors and provides to its employees.

42.     Defendants failed to fulfill their duty to loyally and prudently control the manner by which investments were selected and retained by the Plan.

**B.     Fiduciary Liability Under ERISA**

43.     Under 29 U.S.C. § 1109, fiduciaries to the Plan are personally liable to make good to the Plan any harm caused by their breaches of fiduciary duty. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to *such plan* any losses to the plan resulting from each such breach, and to restore to *such plan* any profits of such fiduciary which have been made through use of assets of the plan by fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

44.     29 U.S.C. § 1132(a)(2) is the enforcement mechanism of 29 U.S.C. § 1109. It enables participants and beneficiaries to bring civil actions to seek appropriate relief under 29 U.S.C. § 1109.

**C.     Co-Fiduciary Liability**

45.     ERISA provides for co-fiduciary liability where a fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty by a co-fiduciary if:

i.    he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

ii.   by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

iii.  he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

### V.    THE PLAN

46.    The UniFirst Plan is a defined contribution plan described in Section 401(k) of the Internal Revenue Code, I.R.C. § 401(k) (1986) (hereinafter denoted as "the Code"), and is subject to the provisions of ERISA.

47.    During the Class Period, the Plan provided for retirement income for approximately 10,000 UniFirst employees, former employees, and their beneficiaries (the "Plan participants"). Defendants exclusively controlled the selection and retention of the Plan's investment options. Participants' retirement account balances primarily depended on contributions they made to their accounts, UniFirst's matching contributions, and the performance (net of fees and expenses) of the Plan's investment options.

48.    As of December 31, 2024, Plan participants had invested over $554 million in the 401(k) Plan.  Approximately $55 million in the 401(k) Plan—or about 10%—was invested in the TRP Growth Fund.

### VI.    OVERVIEW OF INVESTMENT FUNDS

49.    An investment fund (or mutual fund) is a pool of money contributed by a group of investors with similar investment objectives. The investment adviser takes this pool of money and invests in different stocks on behalf of all investors in the fund. The investment adviser manages the

investments in each fund in accordance with the investment objectives and strategies set forth in each fund's investment guidelines. For providing this service, the investment adviser charges the fund an investment advisory fee.

**A.    Active vs. Passive Management**

50.    The TRP Growth Fund is an actively managed fund—that is, a fund that relies on the professional judgment of its investment adviser to make decisions about the fund's portfolio of investments. For the TRP Growth Fund, T. Rowe Price decides which industries they wish to allocate assets to, as well as what stocks to buy and sell and when. T. Rowe Price 's primary focus should be to outperform the benchmark it selected for the Fund: the Russell 1000 Growth Index. Indeed, T. Rowe Price  charges fees for active management on the premise that it can pick a mix of stocks that beat the benchmark.

51.    Active managers run the risk that their methods and analyses, including models, tools, and data, may be flawed or incorrect and may not achieve the fund's aim. This could cause the fund to lag its benchmark. Market research suggests the vast majority of active managers fail to beat their benchmarks. Given that active managers are paid to beat their benchmark, chronic underperformance is a red flag that suggests investors are not getting their money's worth and should consider other investment options.

52.    Investment research and analysis typically drive the investment decisions of actively managed funds. Factors that an investment adviser may consider include, but are not limited to, market trends, a company's financial condition, perceived risk of investing in the company, industry and sector outlook, and the underlying stock's performances in various market conditions. Based on their respective professional judgment, one investment adviser may like consumer stocks while another may like technology stocks, while a third may like stocks whose issuers focus on environmental, social, and governance ("ESG") issues.

53.     Without variations between portfolio holdings, all large-cap stock funds would own identical investment portfolios and have nearly identical investment performance. Active management offers investors the opportunity to earn superior returns through the astute selection of investments. Astute selection typically drives superior investment performance over time and distinguishes the better-performing funds from the underperforming ones. Bad asset allocation and poor investment selection generally drive long-term underperformance.

54.     Actively managed funds stand in contrast to passively managed funds, or index funds, whose objective is to replicate the holdings and investment performance of a designated benchmark index. Other than constructing a portfolio that passively tracks that of the benchmark, the investment adviser makes little, if any, investment decisions for an index fund. Compared to actively managed funds, the fees for index funds are significantly lower.

**B.     Investment Aims of Large-Cap Growth Funds**

55.     The TRP Growth Fund is a large-cap growth fund. The stocks of the biggest companies typically dominate these funds. The principal aim of large-cap growth funds is to provide investors with long-term growth of capital.

56.     The TRP Growth Fund has a growth style. Funds with a growth style invest in stocks of companies that are projected to grow faster than other stocks. Growth is defined based on fast growth (high growth rates for earnings, sales, book value, and cash flow) and high valuations (high price ratios and low dividend yields).

**C.     Investment Risks of Large-Cap Growth Funds**

57.     The principal categories of risks for the TRP Growth Fund include: (1) market risk; (2) issuer risk; and (3) the risk of investing in growth-oriented stocks.

58.     Market risk is the chance that stock prices overall will decline. Stock markets tend to move in cycles, with periods of rising prices and periods of falling prices, so each fund is subject to the

risk that the market as a whole will fall.

59.    Issuer risk is the chance that prices of, and the income generated by, individual securities of companies held by the fund (e.g., AT&T) may decline in response to various factors directly related to the issuers of such securities, including reduced demand for an issuer's goods or services, poor management performance, major litigation, investigations, or other controversies related to the issuer.

60.    Investing in growth-oriented stocks also carries risk. Such stocks (e.g., Tesla) may experience larger price swings and greater potential for loss than other types of stocks, such as those that are considered value-oriented or those that historically have paid continuous dividends (e.g., Bristol Myers).

**D.    Potential Investment Rewards of Actively Managed Large-Cap Growth Funds: Fiduciaries Select Benchmarks to Evaluate Achievement of Potential Rewards**

61.    Investments exist in a world ruled by investment performance. Typically, investors want a portfolio that consists of investments that meet or exceed their respective benchmarks. Whether an investment performs well is concrete rather than abstract.

62.    For an actively managed investment fund, the potential reward is that the fund will deliver positive investment returns that exceed those of its benchmark. Investment advisers select benchmarks that they believe have similar aims, risks, and potential rewards as those of their fund.

63.    T. Rowe Price selected the Russell 1000 Growth Index as the benchmark for the TRP Growth Fund. The Russell 1000 Growth Index is independently maintained by FTSE Russell, a wholly-owned subsidiary of the London Stock Exchange Group. FTSE Russell is a leading global provider of benchmarking, analytics, and data solutions for investors with over 30 years in the business. The Russell 1000 Growth Index measures the performance of the large-cap growth segment of the U.S. stock market. It includes those Russell 1000 companies with relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (i.e.,

growth companies).

## VII. THE TRP GROWTH FUND AND ITS COMPARATORS AND BENCHMARK

### A. TRP Growth Fund (PRGFX)

64. On or before 2009, UniFirst selected the TRP Growth Fund as an investment option for the Plan. The TRP Growth Fund was organized as a mutual fund. More recently, collective trust versions have been established. Currently, UniFirst has the T. Rowe Price Growth Stock Trust E.

65. Whether a mutual fund or a collective trust, the TRP Growth Fund's aim is to seek long-term growth of capital.

66. The Fund pursues its aim by investing primarily in large U.S. companies believed by its managers to possess above-average earnings growth potential. The Fund employs a bottom-up fundamental research strategy focused on identifying companies with sustained revenue and earnings growth, durable competitive advantages, and strong management execution, rather than merely tracking a market index. Consistent with this strategy, the Fund maintains significant exposure to growth-oriented sectors such as technology, communication services, consumer discretionary, and healthcare, and typically holds a concentrated portfolio of securities selected through the discretionary judgment of portfolio management.

67. T. Rowe Price may include in the TRP Growth Fund any stock within the U.S. large-cap growth universe.

68. The overwhelming majority of the portfolio is invested in growth-oriented equities, as reflected by Morningstar's classification of the Fund in the "Large Growth" category. The remainder of the portfolio is generally invested in a limited amount of foreign securities, cash or cash equivalents, and other ancillary holdings permitted under the Fund's investment strategy.

69. The TRP Growth Fund is hardly the only large-cap growth fund on the market with the same mix of aims, risks, and potential rewards as described above. As set forth below, numerous

14

substantially similar funds have existed throughout the Class Period.

### i.    Comparator 1: Fidelity Blue Chip Growth K Fund (FBGKX)

70.    The Fidelity Blue Chip Growth K Fund (the "Fidelity Blue Chip Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Fund.

71.    Like the TRP Growth Fund, the Fidelity Blue Chip Fund is an actively managed large-cap growth fund.

72.    The Fidelity Blue Chip Fund's aim is to seek capital appreciation. The Fidelity Blue Chip Fund pursues its aim by investing primarily in common stocks of companies that have above-average growth potential and normally invests at least 80% of its assets in blue-chip companies—companies that are well-known, well-established, and well-capitalized—which generally have large or medium market capitalizations.

73.    Like the TRP Growth Fund, the Fidelity Blue Chip Fund identifies the Russell 1000 Growth Index as one of its benchmarks.

74.    Morningstar classifies the Fidelity Blue Chip Fund as a large-cap growth fund. Currently, approximately 84% of the Fidelity Blue Chip Fund's portfolio is invested in large-cap stocks, and 46% is invested in growth-oriented stocks. The remainder is invested in bonds, cash, and cash equivalents.

75.    The Fidelity Blue Chip Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The Fidelity Blue Chip Fund's principal risks are related to: (1) market risk; (2) issuer risk; and (3) the risks of investing in growth-oriented stocks.

76.    The aims, risks, and potential rewards of the Fidelity Blue Chip Fund are similar to those of the TRP Growth Fund given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts

make the Fidelity Blue Chip Fund a meaningful comparator to the TRP Growth Fund.

### ii.    Comparator 2: Fidelity Growth Company K Fund (FGCKX)

77.    The Fidelity Growth Company K Fund (the "Fidelity Growth Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Fund.

78.    Like the TRP Growth Fund, the Fidelity Growth Fund is an actively managed large-cap growth fund.

79.    The Fidelity Growth Fund's aim is to seek capital appreciation. The Fidelity Growth Fund pursues its aim by investing primarily in common stocks of companies that have above-average growth potential and normally invests at least 85% of its assets in blue-chip companies—companies that are well-known, well-established, and well-capitalized—which generally have large or medium market capitalizations.

80.    Like the TRP Growth Fund, the Fidelity Growth Fund identifies the Russell 1000 Growth Index as one of its benchmarks.

81.    Morningstar classifies the Fidelity Growth Fund as a large-cap growth fund. Currently, approximately 85-90% of the Fidelity Growth Fund's portfolio is invested in large-cap stocks, with the overwhelming majority of those holdings reflecting growth-oriented investment characteristics. The remainder is invested in bonds, cash, and cash equivalents.

82.    The Fidelity Growth Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The Fidelity Fund's principal risks are related to: (1) market risk; (2) issuer risk; and (3) the risks of investing in growth-oriented stocks.

83.    The aims, risks, and potential rewards of the Fidelity Growth Fund are similar to those of the TRP Growth Fund given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make

16

the Fidelity Growth Fund a meaningful comparator to the TRP Growth Fund.

### iii.    Comparator 3: JPMorgan Growth Advantage R6 Fund (JGVVX)

84.    The JPMorgan Growth Advantage R6 Fund (the "JPMorgan Advantage Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Fund.

85.    Like the TRP Growth Fund, the JPMorgan Advantage Fund is an actively managed large-cap growth fund.

86.    The JPMorgan Advantage Fund's aim is to seek long-term capital appreciation. The JPMorgan Fund pursues its aim by investing primarily in equity securities of large-capitalization companies whose market capitalizations are similar to those within the universe of the Russell 1000 Growth Index. The JPMorgan Advantage Fund typically invests in stocks of companies that are deemed to have a potential to exceed market expectations for a prolonged period of time.

87.    Like the TRP Growth Fund, the JPMorgan Advantage Fund identifies the Russell 1000 Growth Index as one of its benchmarks. Morningstar classifies the JPMorgan Advantage Fund as a large-cap growth fund. Currently, approximately 75–85% of the Fund's portfolio is invested in large-cap stocks, while the overwhelming majority of the portfolio reflects growth-oriented investments. The remainder is invested in cash and cash equivalents.

88.    The JPMorgan Advantage Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The JPMorgan Advantage Fund's principal risks are related to: (1) market risk; (2) issuer risk; and (3) the risks of investing in growth-oriented stocks.

89.    The aims, risks, and potential rewards of the JPMorgan Advantage Fund are similar to those of the TRP Growth Fund given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts

make the JPMorgan Advantage Fund a meaningful comparator to the TRP Growth Fund.

### iv.    Comparator 4: JPMorgan Large Cap Growth R6 Fund (JLGMX)

90.    The JPMorgan Large Cap Growth R6 Fund ("JPMorgan Large Cap Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Fund.

91.    Like the TRP Growth Fund, the JPMorgan Large Cap Fund is an actively managed large-cap growth fund.

92.    The aim of the JPMorgan Large Cap Fund is to generate long-term capital growth in excess of its benchmark index. The JPMorgan Large Cap Fund pursues its aim, under normal circumstances, by investing at least 80% of its net assets in companies of a size similar to those in the Russell 1000 Growth Index, mainly in common stocks of large U.S. Companies with a focus on growth stocks.

93.    Like the TRP Growth Fund, the JPMorgan Large Cap Fund identifies the Russell 1000 Growth Index as one of its benchmarks.

94.    Morningstar classifies the JPMorgan Large Cap Fund as a large-cap growth fund. Currently, approximately 80%-90% of the JPMorgan Large Cap Fund's portfolio is invested in large-cap stocks, while the overwhelming majority of the portfolio reflects growth-oriented investments. The remainder is invested in cash and cash equivalents.

95.    The JPMorgan Large Cap Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The JPMorgan Large Cap Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

96.    The aims, risks, and potential rewards of the JPMorgan Large Cap Fund are similar to those of the TRP Growth Fund given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options

that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make the JPMorgan Large Cap Fund a meaningful comparator to the TRP Growth Fund.

### v.    Comparator 5: Alger Focus Equity Fund Z (ALZFX)

97.    The Alger Focus Equity Fund Z (the "Alger Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Fund.

98.    Like the TRP Growth Fund, the Alger Fund is an actively managed large-cap growth fund.

99.    The aim of the Alger Fund is to generate long-term capital growth in excess of its benchmark index. The Alger Fund pursues its aim, under normal circumstances, by investing in a relatively concentrated portfolio of about 50 stocks that they believe have strong growth potential based on their fundamental research.

100.    Like the TRP Growth Fund, the Alger Fund identifies the Russell 1000 Growth Index as one of its benchmarks.

101.    Morningstar classifies the Alger Fund as a large-cap growth fund. Currently, approximately 80%-90% of the Alger Fund's portfolio is invested in large-cap stocks, while the overwhelming majority of the portfolio reflects growth-oriented investments. The remainder is invested in cash and cash equivalents.

102.    The Alger Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The Alger Fund's principal risks are related to: (1) market risk; (2) issuer risk; and (3) the risks of investing in growth-oriented stocks.

103.    The aims, risks, and potential rewards of the Alger Fund are similar to those of the TRP Growth Fund given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make the Alger Fund a

meaningful comparator to the TRP Growth Fund.

### vi.    Comparator 6: Voya Russell Large Cap Growth Index Port I Fund (IRLNX)

104.    The Voya Russell Large Cap Growth Index Port I Fund (the "Voya Fund") is a passively managed index fund that seeks to track the performance of a benchmark index that measures the investment return of large-capitalization growth stocks in the United States (i.e., the Russell 1000 Growth Index). The Voya Fund attempts to replicate the Russell 1000 Growth Index by investing all, or substantially all, of its assets in the stocks that make up the Index, holding each stock in approximately the same proportion as its weighting in the Index.

105.    Currently, and based on the Voya Fund's index-tracking strategy and Morningstar's classification of the Fund within the "Large Growth" category, approximately 90% or more of the portfolio is invested in large-cap stocks, and virtually all of the equity holdings reflect growth-oriented investment characteristics. The remainder of the portfolio is generally invested in limited cash positions, cash equivalents, or ancillary holdings used for liquidity and index-tracking purposes.

106.    The Voya Fund's potential rewards are that it will generate investment returns in line with the Russell 1000 Growth Index. The Voya Fund's principal risks are related to: (1) market risk; (2) issuer risk; and (3) investing in growth-oriented stocks.

107.    By virtue of the similarities in their respective market capitalizations, the Voya Fund and the TRP Growth Fund share similar aims, rewards, and levels of risk. This makes the Voya Fund a meaningful Comparator for the TRP Growth Fund.

108.    Indeed, by disclosing the Russell 1000 Growth Index to the public as the appropriate benchmark for the TRP Growth Fund, T. Rowe Price necessarily concludes that the Russell 1000 Growth Index shares similar aims, risks, and rewards as the TRP Growth Fund.

109.    The Comparator Funds are not alleged to be identical to the TRP Growth Fund. They are alleged to be meaningful comparators because they occupied the same large-cap growth investment

20

category, pursued substantially similar long-term capital growth objectives, exposed participants to similar equity-market and growth-stock risks, and were available alternatives that a prudent fiduciary could have considered when evaluating whether continued retention of the TRP Growth Fund remained prudent.

110. The Voya Fund is also a meaningful comparator because the TRP Growth Fund's own benchmark was the Russell 1000 Growth Index, and a low-cost index fund tracking that same benchmark would have provided participants with similar market exposure without paying for unsuccessful active management.

## VIII.   THE TRP GROWTH FUND UNDERPERFORMED ITS BENCHMARK AND COMPARATOR FUNDS FOR OVER A DECADE

111. Defendants are required by law to monitor the Plan's investments and remove imprudent ones. They must perform these duties with the skill of a prudent expert.

112. For a prudent fiduciary, investment options that, on average, underperform their benchmarks over rolling three-, five-, or ten-year periods are generally candidates for removal. Upon information and belief, such guidelines are often outlined in a plan's investment policy statement.

113. Upon information and belief, a prudent investment review process for a large defined contribution plan would have required Defendants to evaluate whether the TRP Growth Fund continued to satisfy objective performance criteria, including rolling three-, five-, and ten-year returns relative to its stated benchmark, peer-group alternatives, risk-adjusted performance, fees, and the availability of materially similar lower-cost or better-performing replacements. Persistent failure across those metrics would require heightened review, watch-list placement, and, absent a documented fiduciary rationale, removal within a reasonable time.

114. Had the UniFirst Defendants fulfilled their duty with the care and skill of a prudent fiduciary, they would have monitored the Plan in accordance with a reasonable investment review process would have placed the TRP Growth Fund on watch, investigated its persistent

21

underperformance, compared it to readily available alternatives, and removed or replaced it no later than the start of the Class Period..

115.    Indeed, by December 31, 2019, the TRP Growth Fund had underperformed each of the Russell 1000 Growth Index, the Fidelity Blue Chip Fund, the Fidelity Growth Fund, the JPMorgan Advantage Fund, the JP Morgan Large Cap Fund, the Voya Fund, and the Alger Fund ("Comparator Funds"), over the preceding three-, five-, and ten-year periods.

116.    By early 2020, any fiduciary properly monitoring the Plan would have seen that the circumstances warranted the selection of a new option. Yet, UniFirst has failed to replace the TRP Growth Fund with any one of the many prudent alternatives available on the market through the present.

117.    The performance data below is based on publicly available fund-performance data, including annual and trailing return information available to retirement plan fiduciaries, investment consultants, recordkeepers, and other market participants during the relevant periods.

118.    **Table 1.a** below demonstrates the underperformance of the TRP Growth Fund compared to its benchmark index and to the six Comparator Funds for the ten-year period from January 1, 2010, through December 31, 2019. By late 2019, any prudent fiduciary would have recognized that the TRP Growth Fund should have been removed.

**Table 1.a**
**January 1, 2010 - December 31, 2019**

| Fund | Cumulative Return | Annualized Return |
|---|---|---|
| T. Rowe Price Growth Stock I | 308.40% | 15.11% |
| Russell 1000 Growth TR USD | 312.34% | 15.22% |
| +/- T. Rowe Price Growth Stock I | -3.94% | -0.11% |
| Fidelity Blue Chip Growth K | 340.63% | 15.99% |
| +/- T. Rowe Price Growth Stock I | -32.23% | -0.88% |
| Fidelity Growth Company K | 373.24% | 16.82% |
| +/- T. Rowe Price Growth Stock I | -64.84% | -1.71% |
| JPMorgan Growth Advantage R6 | 344.86% | 16.10% |
| +/- T. Rowe Price Growth Stock I | -36.46% | -0.99% |
| JPMorgan Large Cap Growth R6 | 332.61% | 15.77% |
| +/- T. Rowe Price Growth Stock I | -24.21% | -0.66% |
| Voya Russell Large Cap Growth Idx Port I | 306.83% | 15.06% |
| +/- T. Rowe Price Growth Stock I | 1.57% | 0.04% |
| Alger Focus Equity Z | 280.67% | 14.30% |
| +/- T. Rowe Price Growth Stock I | 27.73% | 0.81% |

119.    Yet the Defendants failed to remove the TRP Growth Fund. And the TRP Growth Fund continued to perform poorly throughout the Class Period.

120.    **Table 1.b**, below, illustrates the underperformance of the TRP Growth Fund from January 1, 2020, through December 31, 2025, on an annual and cumulative basis relative to the Russell 1000 Growth Index and the six Comparator Funds. The TRP Growth Fund underperformed the Russell 1000 Growth Index by nearly 67% during this period.

23

**Table 1.b**
**January 1, 2020 - December 31, 2025**

| Fund | Annual Performance | | | | | | Cumulative Performance |
|---|---|---|---|---|---|---|---|
| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | |
| T. Rowe Price Growth Stock I | 37.09% | 20.18% | -40.05% | 45.44% | 29.76% | 15.80% | 115.84% |
| Russell 1000 Growth TR USD | 38.49% | 27.60% | -29.14% | 42.68% | 33.36% | 18.56% | 182.49% |
| +/- T. Rowe Price Growth Stock I | -1.40% | -7.42% | -10.91% | 2.76% | -3.60% | -2.76% | -66.64% |
| Fidelity Blue Chip Growth K | 62.38% | 22.81% | -38.40% | 55.76% | 39.80% | 19.99% | 220.93% |
| +/- T. Rowe Price Growth Stock I | -25.28% | -2.63% | -1.65% | -10.32% | -10.05% | -4.19% | -105.09% |
| Fidelity Growth Company K | 67.69% | 22.73% | -33.74% | 47.33% | 37.31% | 24.42% | 243.20% |
| +/- T. Rowe Price Growth Stock I | -30.60% | -2.55% | -6.31% | -1.89% | -7.55% | -8.62% | -127.36% |
| JPMorgan Growth Advantage R6 | 54.00% | 22.50% | -29.88% | 40.47% | 31.43% | 16.06% | 183.41% |
| +/- T. Rowe Price Growth Stock I | -16.91% | -2.31% | -10.17% | 4.97% | -1.67% | -0.26% | -67.57% |
| JPMorgan Large Cap Growth R6 | 56.42% | 18.79% | -25.21% | 34.95% | 34.17% | 14.40% | 187.85% |
| +/- T. Rowe Price Growth Stock I | -19.33% | 1.39% | -14.84% | 10.49% | -4.41% | 1.39% | -72.01% |
| Voya Russell Large Cap Growth Idx Port I | 38.46% | 30.66% | -30.03% | 45.99% | 34.60% | 18.12% | 193.85% |
| +/- T. Rowe Price Growth Stock I | -1.37% | -10.48% | -10.02% | -0.55% | -4.84% | -2.33% | -78.01% |
| Alger Focus Equity Z | 46.12% | 20.00% | -35.75% | 44.63% | 52.22% | 40.36% | 248.15% |
| +/- T. Rowe Price Growth Stock I | -9.03% | 0.18% | -4.30% | 0.80% | -22.47% | -24.56% | -132.31% |

121. The annualized performance numbers in **Table 1.b** highlight the overall underperformance of the TRP Growth Fund. The magnitude of this underperformance is captured by the cumulative numbers in **Table 1.b**. Overall, the TRP Growth Fund remained an imprudent investment for the Plan.

122. Together, **Tables 1.a** and **1.b** capture the depth and the breadth of the TRP Growth Fund's underperformance relative to meaningful benchmarks that has persisted for more than fifteen years.

123. All the data presented in each of the above **Tables 1.a** and **1.b** was available in real time,

not in hindsight, to the UniFirst Defendants throughout the Class Period.

124.    Defendants' failure to remove the T. Rowe Price Growth Stock Fund cost Plan participants tens of millions of dollars in retirement savings. On average, during the period from January 1, 2020, through December 31, 2024, the assets of the T. Rowe Price Growth Stock Fund were approximately $50 million.

125.    **Table  1.c**  below compares the investment growth of $47.6 million invested in the T. Rowe Price Growth Stock Fund (the balance at the end of 2019) to the growth of $47.6 million invested in each of the Comparator Funds from January 1, 2020, through December 31, 2025. As **Table 1.c** shows, Plan participants would have substantially more dollars in retirement savings had Defendants replaced the T. Rowe Price Growth Stock Fund with any of the six Comparator Funds or a fund that more closely matched the Russell 1000 Growth Index.

**Table 1.c**
**January 1, 2020 - December 31, 2025**

| Fund | Annual Performance | | | | | | Cumulative Performance | Annualized Performance | Growth of $47,635,153 |
|---|---|---|---|---|---|---|---|---|---|
| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | | | |
| T. Rowe Price Growth Stock I | 37.09% | 20.18% | -40.05% | 45.44% | 29.76% | 15.80% | 115.84% | 13.68% | $102.8 million |
| Russell 1000 Growth TR USD | 38.49% | 27.60% | -29.14% | 42.68% | 33.36% | 18.56% | 182.49% | 18.90% | $134.6 million |
| +/- T. Rowe Price Growth Stock I | -1.40% | -7.42% | -10.91% | 2.76% | -3.60% | -2.76% | -66.64% | -5.21% | -$31.7 million |
| Fidelity Blue Chip Growth K | 62.38% | 22.81% | -38.40% | 55.76% | 39.80% | 19.99% | 220.93% | 21.45% | $152.9 million |
| +/- T. Rowe Price Growth Stock I | -25.28% | -2.63% | -1.65% | -10.32% | -10.05% | -4.19% | -105.09% | -7.77% | -$50.1 million |
| Fidelity Growth Company K | 67.69% | 22.73% | -33.74% | 47.33% | 37.31% | 24.42% | 243.20% | 22.82% | $163.5 million |
| +/- T. Rowe Price Growth Stock I | -30.60% | -2.55% | -6.31% | -1.89% | -7.55% | -8.62% | -127.36% | -9.14% | -$60.7 million |
| JPMorgan Growth Advantage R6 | 54.00% | 22.50% | -29.88% | 40.47% | 31.43% | 16.06% | 183.41% | 18.96% | $135.0 million |
| +/- T. Rowe Price Growth Stock I | -16.91% | -2.31% | -10.17% | 4.97% | -1.67% | -0.26% | -67.57% | -5.28% | -$32.2 million |
| JPMorgan Large Cap Growth R6 | 56.42% | 18.79% | -25.21% | 34.95% | 34.17% | 14.40% | 187.85% | 19.27% | $137.1 million |
| +/- T. Rowe Price Growth Stock I | -19.33% | 1.39% | -14.84% | 10.49% | -4.41% | 1.39% | -72.01% | -5.59% | -$34.3 million |
| Voya Russell Large Cap Growth Idx Port I | 38.46% | 30.66% | -30.03% | 45.99% | 34.60% | 18.12% | 193.85% | 19.68% | $140.0 million |
| +/- T. Rowe Price Growth Stock I | -1.37% | -10.48% | -10.02% | -0.55% | -4.84% | -2.33% | -78.01% | -6.00% | -$37.2 million |
| Alger Focus Equity Z | 46.12% | 20.00% | -35.75% | 44.63% | 52.22% | 40.36% | 248.15% | 23.11% | $165.8 million |
| +/- T. Rowe Price Growth Stock I | -9.03% | 0.18% | -4.30% | 0.80% | -22.47% | -24.56% | -132.31% | -9.43% | -$63.0 million |

25

126. The Comparator Funds listed in each of the above Tables are managed by reputable investment advisers with significant assets under management and are available to all large retirement plans, including to the UniFirst's Plan. UniFirst would not have had to scour the market to find them.

127. Defendants owed a fiduciary duty to remove the TRP Growth Fund within a reasonable time after it manifested poor performance. Yet they retained the Fund year after year, even though it consistently failed its objectives.

128. Any prudent fiduciary monitoring the Plan in accordance with a reasonable investment review process would have placed the TRP Growth Fund on watch, investigated its persistent underperformance, compared it to readily available alternatives, and removed or replaced it no later than the start of the Class Period. No prudent fiduciary would have retained the Fund, like UniFirst has, throughout the Class Period.

129. The inference of imprudence is reinforced by the duration, consistency, and magnitude of the TRP Growth Fund's underperformance. This is not a case based on a single disappointing year, temporary volatility, or hindsight disagreement with a fiduciary's reasonable investment judgment.

130. By the start of the Class Period, the Fund had exhibited persistent underperformance across multiple trailing periods, against its own benchmark, and against readily available alternatives in the same investment category. A prudent fiduciary process would have required Defendants to identify those red flags, investigate whether continued retention was justified, and replace the Fund absent a documented, participant-focused rationale for keeping it in the Plan. UniFirst failed to do this.

## IX.    CLASS ACTION ALLEGATIONS

131. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a). Plaintiffs bring this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief

under 29 U.S.C § 1109 to protect the interests of the Plan.

132.    In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to a direct individual action on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiffs seek to certify this action as a class action on behalf of participants and beneficiaries of the Plan who invested in the TRP Growth Fund during the Class Period. Specifically, Plaintiffs seek to certify, and to be appointed as representatives of, the following Class:

> All participants and beneficiaries of the Plan who invested in the TRP Growth Fund from June 2, 2020, through the date of judgment, excluding the UniFirst Defendants, any of their directors, and any officers or employees of UniFirst Defendants with responsibility for the Plan's investment or administrative function.

133.    This Class meets the requirements of Federal Rule of Civil Procedure 23 and is certifiable as a class action for the following reasons:

a.    The Class includes thousands of members and is so large that joinder of all its members is impracticable.

b.    There are numerous questions of law and fact common to this Class because the UniFirst Defendants owed the same fiduciary duties to the Plan and to all participants and beneficiaries and took a common course of actions and omissions as alleged herein as to the Plan, and not as to any individual participant, that affected all Class members through their participation in the Plan in the same way. Thus, questions of law and fact common to the Class include, without limitation, the following: (i) whether each of the Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a); (ii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by employing an imprudent process for monitoring and evaluating Plan investment options; (iii) whether the fiduciaries of the Plan

breached their fiduciary duties to the Plan by retaining an imprudent investment for an unreasonable amount of time; (iv) whether Plaintiffs' claims of an imprudent process require similar inquiries and proof of the claims, and therefore implicate the same set of concerns, for all proposed members of the Class; (v) what are the losses to the Plan resulting from each breach of fiduciary duty; and (vi) what Plan-wide equitable and other relief the Court should impose in light of the UniFirst Defendants' breach of duties. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs were Plan participants who invested in the TRP Growth Fund during the Class Period, and all participants in the Plan who invested in the TRP Growth Fund were harmed by the UniFirst Defendants' misconduct.

c. Plaintiffs are adequate representatives of the Class because they participated in the Plan during the Class Period, invested in the TRP Growth Fund, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent attorneys to represent the Class.

d. There are no substantial individualized questions of law or fact among Class members on the merits of this Action.

134. Prosecution of separate actions for these imprudent investment breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the UniFirst Defendants in respect to the discharge of their fiduciary duties to the Plan and their personal liability to the Plan under 29 U.S.C. § 1109(a). Moreover, adjudications by individual participants and beneficiaries regarding the alleged breaches of fiduciary duties, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication

or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

135.    Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because the UniFirst Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Plaintiffs seek reformation of the Plan to include only prudent investments, which will benefit them and other Plan participants.

136.    Plaintiffs' counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Classes under Rule 23(g).

## CAUSES OF ACTION

## COUNT I

**Breach of Duty of Prudence by Mismanaging and Failing to Remove Imprudent
Investments from the Plan Within a Reasonable Time
(Violation of ERISA, 29 U.S.C. § 1104)
(Against All UniFirst Defendants)**

137.    All allegations set forth in the Complaint are realleged and incorporated herein by reference.

138.    At all relevant times during the Class Period, the UniFirst Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by exercising authority and control with respect to the management of the UniFirst Plan and its assets, and/or by rendering investment advice or by having authority or responsibility to render investment advice to the Plan, and/or were designated in the governing Plan documents as a named fiduciary within the meaning of 29 U.S.C. § 1102(a).

139.    29 U.S.C. § 1104(a)(1)(B) requires a plan fiduciary to act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

140. Thus, under ERISA, the UniFirst Defendants, as a prudent fiduciary, should have monitored the Plan in accordance with a reasonable investment review process and should have placed the TRP Growth Fund on watch, investigated its persistent underperformance, compared it to readily available alternatives, and removed or replaced it no later than the start of the Class Period.

141. The UniFirst Defendants breached their fiduciary duties through an imprudent process for investigating, evaluating, and monitoring investments. The faulty process resulted in a Plan that included a fund that suffered poor performance for well over a decade. UniFirst Defendants failed to remove the TRP Growth Fund within a reasonable time despite historical underperformance relative to its relevant benchmark index and Comparator Funds.

142. By failing to replace the TRP Growth Fund with (a) a better-performing actively managed investment option, or (b) with a cheaper and better performing passively managed investment option (such as the Voya fund identified above), the UniFirst Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

143. The UniFirst Defendants' breach of fiduciary duty has substantially impaired the Plan's use, its value, and its investment performance for all Class members.

144. As a direct and proximate result of the UniFirst Defendants' breaches of fiduciary duty, the Plan has suffered tens of millions of dollars of damages which continue to accrue and for which the UniFirst Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109(a).

145. Each of the UniFirst Defendants is liable to make good to the Plan any losses resulting from the aforementioned breaches and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. The UniFirst Defendants are also subject to other Plan-wide equitable or remedial relief as appropriate, including an injunction and the removal of fiduciaries.

146.    Each UniFirst Defendant also participated in the breach of the other UniFirst Defendants, knowing that such acts were a breach, and enabled the other UniFirst Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties. Each UniFirst Defendant knew of the breach by the other UniFirst Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each UniFirst Defendant is liable for any losses caused by the breach of its co-fiduciary duties under 29 U.S.C. § 1105(a).

## COUNT II

**Failure to Monitor Fiduciaries and Appointed Plan Committee Members**
**(Violation of ERISA, 29 U.S.C. § 1104)**
**(Against UniFirst, the Board, and Any Defendant With Appointment or Monitoring Authority)**

147.    All allegations set forth in the Complaint are realleged and incorporated herein by reference.

148.    The UniFirst and UniFirst Board Defendants had a duty to monitor the performance of each party to whom they delegated any fiduciary responsibilities. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

149.    To the extent any of UniFirst or UniFirst Board Defendants' fiduciary responsibilities were delegated to another fiduciary, like the Plan Committee, UniFirst and UniFirst Board Defendants monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently, loyally, and in compliance with governing Plan documents.

150.    The UniFirst and UniFirst Board Defendants breached their fiduciary monitoring duties by, among other things:

   a.    failing to monitor their Plan Committee appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered

31

enormous losses as a result of their appointees' actions and omissions in violation of ERISA;

b. failing to monitor their Plan Committee's fiduciary process;

c. failing to ensure that the Plan Committee had a prudent process in place for evaluating and ensuring that investment options were prudent; and

d. failing to remove appointees on the Plan Committee whose performance was inadequate in that they continued to allow investment options that were imprudent and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

151. Each fiduciary who delegated their fiduciary responsibilities likewise breached their fiduciary monitoring duty by, among other things:

a. failing to monitor the Plan Committee, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of Plan Committee's actions and omissions in violation of ERISA;

b. failing to monitor the Plan Committee's fiduciary process;

c. failing to ensure that the Plan Committee had a prudent process in place for evaluating and ensuring that investment options were prudent; and

d. failing to remove appointees on the Plan Committee whose performance was inadequate in that they continued to allow investment options that were imprudent and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

152. As a direct result of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had UniFirst and UniFirst Board Defendants discharged their fiduciary monitoring duties, the Plan would not have suffered these losses.

**PRAYER FOR RELIEF**

For these reasons, Plaintiffs, on behalf of the UniFirst Plan, and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

i.    find and adjudge that the UniFirst Defendants have breached their fiduciary duties, as described above;

ii.    find and adjudge that the UniFirst Defendants are personally liable to make good to the Plan any losses to the Plan resulting from each breach of fiduciary duty and otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

iii.    order the UniFirst Defendants to make good to the Plan the losses resulting from each breach of fiduciary duty and to restore to the Plan any profits resulting from each breach of fiduciary duty;

iv.    find and adjudge that the UniFirst Defendants are liable to the Plan for appropriate Plan-wide equitable relief, including but not limited to restitution and disgorgement;

v.    determine the method by which Plan losses under 29 U.S.C. § 1109(a) should be calculated;

vi.    order the UniFirst Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C.§ 1109(a);

vii.    remove the fiduciaries who have breached their fiduciary duties;

viii.    impose surcharge against the UniFirst Defendants and in favor of the Plan all amounts involved in, and all Plan losses arising from, any transactions or fiduciary breaches that were in violation of ERISA;

ix.    reform the Plan to include only prudent investments;

x.    certify the Class, appoint the Plaintiffs as class representatives, and appoint

33

Walcheske & Luzi, LLC and Jonathan Feigenbaum, as Class Counsel;

xi.   award to the Plaintiffs and the Class their attorney's fees and costs under 29 U.S.C. §

1132(g)(1) and the common fund doctrine; order the UniFirst Defendants to pay interest

to the extent allowed by law; and

xii.   grant such other equitable or remedial relief as the Court deems appropriate.

Respectfully submitted,

Date: June 2, 2026

**DANIEL J. RODGERS, DOMINIQUE LEUZZI-MEEK and JAMES A. PERRY, JR., individually, and as Representatives of a Class of Participants and Beneficiaries of UniFirst Corporation Retirement Savings Plan,**

*/s/ Jonathan M. Feigenbaum*
Jonathan M. Feigenbaum
BBO #546686
184 High Street, Suite 503
Boston, MA 02110
Telephone: (617) 357-9700
jonathan@erisaattorneys.com

**WALCHESKE & LUZI, LLC**

Paul M. Secunda (*pro hac vice* motion pending)
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

*Attorneys for Plaintiffs and Proposed Class*

34